UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:19-CR-00003-GNS-HBB-1

**UNITED STATES OF AMERICA**                                                          **PLAINTIFF**

VS.

**AJANI JOHN STEVENS**                                                                **DEFENDANT**

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

Before the Court is the motion of Defendant Ajani John Stevens to suppress evidence (DN 17). The United States responded in opposition (DN 18). The District Judge referred the motion to the undersigned to conduct any necessary evidentiary hearing and submit a Report and Recommendation for disposition of the motion (DN 19). The undersigned conducted an evidentiary hearing on July 22, 2019 and the transcript of testimony is of record at DN 25. The United States filed a post-hearing memorandum at DN 27 and Stevens filed a memorandum at DN 28. The matter now stands fully briefed.

<u>Nature of the Criminal Charges</u>

Stevens was indicted by a Grand Jury sitting in the Western District of Kentucky and charged with the offense of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 942(a)(2) and 924(e)(1) (DN 1). Specifically, the indictment alleges that Stevens was previously convicted of felony offenses in Cook County Circuit Court in Illinois in 1996, 2004 and 2010 and thereafter knowingly possessed a Lorcin .25 caliber semi-automatic pistol.

The firearm was discovered during a police search of a vehicle Stevens was driving, and he seeks suppression of the firearm as evidence.

Testimony at the Evidentiary Hearing

Leigh Ann Dycus represented the United States at the hearing, and Stevens' appointed counsel, Laura R. Wyrosdick, appeared on his behalf. Stevens was present during the hearing but elected not to testify. The United States called two witnesses, Kentucky State Police Troopers Jeremy Duvall and Justin Rountree.

Trooper Duvall testified that on July 26, 2018 he was engaged in regular patrol of interstate 65 in Warren County when he observed a vehicle traveling in the middle lane of the divided three-lane highway which "appeared to be going much slower than the traffic around it" (DN 25, p. 5). He also noted that the vehicle had excessively dark window tinting which, based upon his training and experience, he believed was in violation of a state statute. Finally, he observed that the license plate had an aftermarket accessory which obscured the identity of the issuing state, also a violation of state statute. He briefly followed Stevens and executed a traffic stop based upon the window tinting and obscured license plate observations.

Stevens was the sole occupant of the vehicle. Trooper Duvall asked him for his driver's license, which Stevens was unable to produce. Trooper Duvall asked for his name and understood him to say "John Stevens" and Stevens provided his date of birth. Stevens told Trooper Duvall that he was traveling from Atlanta Georgia and that he believed he had a valid license issued by Illinois. The vehicle registration documents were not in his name. Stevens told Trooper Duvall it belonged to his mother.

Trooper Duvall then returned to his vehicle and began communicating with his dispatch to see if he could verify whether Stevens had a valid driver's license. Dispatch was unable to locate any records, so Trooper Duvall obtained additional information from Stevens, including his social security number. It appears there may have been some confusion between Stevens and Trooper

Duvall as to whether Stevens told him his first name was "John" or "Ajani." While Trooper Duvall was attempting to determine Stevens' license status, KSP Trooper Lawless arrived on scene. At that point, Trooper Duvall asked Stevens to exit the vehicle.

> "We still don't know who he is, we know the vehicle's not his, and we're unsure about his identity. So, we want to get him out, do a Terry frisk, and ask for consent to search."

(DN 25, p. 11, ln. 13-15).

Trooper Duvall conducted a Terry frisk and then asked Stevens for permission to search the car.

> Q. "And going back to the consent issue, explain that to us. How did you obtain consent to search the vehicle?
>
> A. It was – he was outside his vehicle. A Terry frisk had been conducted. He was submitted to that. And while I discussed – we were between my patrol vehicle and his car, safely off the – kind of out of the traffic pattern. Trooper Lawless was in the area – not necessarily right on top of us, but he was in the area – standing by. And I asked for verbal consent to search, and Mr. Stevens granted that.
>
> Q. Did you ask Mr. Stevens if he had any illegal items in the vehicle?
>
> A. I did.
>
> Q. And what did he say?
>
> A. I asked for items such as weapons or any kind of open alcohol. He denied any weapons in the vehicle but did state he had open alcohol containers.
>
> Q. And where specifically did he say that open alcohol was?
>
> A. In the trunk.
>
> Q. All right. Did he mention any other items that would be located in the trunk?
>
> A. He did say that there was a tool pouch in the trunk."

(Id. at p. 11, ln. 21-p. 12, ln. 16).

Nothing was discovered during the search of the passenger compartment. Troopers Lawless and Rountree conducted a search of the trunk. While Stevens contends in his brief they did not find an open container, the testimony demonstrates otherwise:

> Q "Did you find an open container of alcohol in the trunk?
>
> A. I believe that Trooper Rountree and Trooper Lawless actually searched the trunk area.
>
> Q. In your citation, you gave him charges for several things. Was open container one of them?
>
> A. No, *because it was in the trunk area of the vehicle.*
>
> Q. And that would not be a violation; right?
>
> A. No.
>
> Q. You also testified that when you asked him if there's anything illegal in the trunk, he said there's a tool pouch, there's a red Milwaukee-brand tool bag in there too; is that correct?
>
> A. Yes.
>
> Q. He told you that when you asked him if there was any contraband in the car?
>
> A. If I remember correctly, it was once Trooper Rountree and Trooper Lawless actually started to search the trunk that *he points out the open bottle of alcohol* and says, "There's nothing in there but a tool pouch.'"

(Id. at p. 21, ln. 15-p. 22, ln. 7) (emphasis added).

A container in the trunk would not have constituted a violation (Id. at p. 21). Beneath the trunk floor liner covering the spare tire compartment the troopers found a red Milwaukee-branded tool pouch. Within the tool pouch they discovered the firearm, as well as a box of ammunition and a receipt. While the search was underway, Trooper Duvall confirmed through dispatch that Stevens' license was revoked. After taking Stevens into custody Trooper Duvall used an electronic device to test the degree of tinting on the windows and determined that the tinting was excessive.

He was cited for obscured license plate, excessive window tinting, operating on a revoked license and possession of a handgun by a convicted felon.

### Stevens' Motion to Suppress

Stevens contends that the search exceeded the reasonable scope of his consent considering the object of the search. He notes that:

> An individual can limit the scope of the consent regarding the search of an automobile, but police are permitted to search closed containers within the car "if that closed container might *reasonably* hold the object of the search." *Jimeno*, *Id*. "The scope of a search is generally defined by its expressed object." Jimeno, *Id*. and as cites to *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) . "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness. "
> *Illinois v. Rodriguez, Id.*, at 183.

He further notes that, other than his inability to provide proof of identity and the officer's difficulty in obtaining verification of his license status, there was nothing that occurred during the traffic stop that would give rise to suspicion that the car held evidence of a crime. Trooper Duvall testified that Stevens did not appear to be intoxicated or under the influence of drugs. There was no indication of drugs, alcohol or paraphernalia in the car. While Trooper Duvall testified that he was concerned that Steven's inability to produce proof of identity could indicate that the name and information he gave was that of another person and that he might be engaged in, and the search might reveal, evidence of identity theft, Stevens dismisses this as a post-facto rationalization so unreasonable as to be a complete fantasy. Stevens also notes that there was no evidence of identity theft in the passenger compartment, such as ID cards or personal records. Steven's only admission was that there was an open container of alcohol in the trunk. Given that an open container in the trunk was not illegal, Stevens contends that there was no reasonable basis for the officers to search not only the trunk, but the spare tire compartment, and then the tool pouch, all in search of an open container or proof of identity theft.

The United States' Argument

The United States defends the reasonableness of all phases of law enforcement's interactions with Stevens.  First, the United States asserts that the traffic stop that initiated the sequence of events was lawful, as an officer may detain a motorist based upon the officer's probable cause to believe a traffic law has been violated.  The United States further asserts that Trooper Duvall had probable cause to believe the Stevens' window tinting was darker than allowed by KRS 189.110(3), and that subsequent testing of the window tint validated this suspicion.  Moreover, under KRS 186.170 trim may not conceal any lettering or decal of a vehicle license plate.  Trooper Duvall testified that he observed the trim around Stevens' license plate obscured the state of issue, providing further probable cause.

As to the request that Stevens exit the vehicle, the United States contends the request was reasonable for safety reasons.  The traffic stop itself, the United states argues, was not unreasonably delayed because it did not take any longer than necessary for Trooper Duvall to conduct his investigation of Stevens' identity and license status.  During this time the officers were permitted to ask him questions.

Finally, and most significant to Stevens' motion, the United States defends the reasonableness of the scope of the consent to search.  The United States notes that it was Stevens himself who alerted the officers to the presence of a tool pouch in the trunk, as well as an open container of alcohol, and he never withdrew his consent at any time during the search.  The United States cites United States v. Grant, 112 F.3d 239, 243 (6th Cir. 1997) for the proposition that a general consent to search includes unlocked containers found in the place where consent was given.

Discussion

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. Amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). Evidence obtained in violation of a defendant's constitutional rights bars the use of that evidence against him at trial. Mapp v. Ohio, 367 U.S. 643 (1961).

Stevens does not appear to contest whether there was probable cause for the traffic stop, whether the traffic stop was unreasonably delayed or whether the search was consensual. Instead, Stevens focuses on the scope of the search and whether the officers were justified in looking beneath the spare tire cover and then opening the tool pouch discovered within. Nonetheless, in the interest of thoroughly evaluating the events, each checkpoint along the way should be considered.

1. Probable cause to effect the traffic stop.

"An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment. Accordingly, any evidence seized during an illegal traffic stop must be suppressed as fruits of the poisonous tree." United States v. Jackson, 682 F.3d 448, 453 (6th Cir. 2012). However, a police officer may legally stop a car when he has probable cause to believe that a civil traffic violation has occurred. United States v. Torres-Ramos, 536 F.3d 542, 550 (6thCir. 2008). Probable

cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion. United States v. Jackson, 470 F.3d 299, 306 (6th Cir. 2006).

In the present case, Trooper Duvall's attention was initially drawn to Stevens' vehicle because he appeared to be driving unusually slowly. With his attention thus directed to the vehicle, he noted what he believed to be excessively tinted windows. When he began following Stevens, he further noted that the license plate appeared to be obscured by a frame or trim, an additional statutory violation. These observations provided sufficient probable cause for Trooper Duvall to initiate a traffic stop to further investigate the matters. See United States v. Moreno, 43 Fed. Appx. 760, 765-66) (6th Cir. 2002) (Unpub.) (Officer's belief that window tinting violated ordinance justified traffic stop to conduct further investigation).

2. Whether the traffic stop was unreasonably delayed.

In Rodriguez v. United States, 135 S. Ct. 1609 (2015) the Supreme Court specified the measure to determine the permissible amount of time a suspect may be detained during a traffic violation investigatory stop. The permissible amount of time is tied to the "mission" of the stop, which focuses on traffic safety and includes both the issuance of a citation or warning and ordinary inquiries, such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. Rodriguez, 1035 S. Ct. at 1614-16. Moreover, the Supreme Court has stressed that "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." Arizona v. Johnson, 555 U.S. 323, 333 (2009), *see also* United States v. Everett, 601 F.3d 484, 489-497 (6th Cir. 2010). These questions may include "general questions of who, what, where, and why" of the driver's travel, particularly when

there are potentially suspicious circumstances involved. United States v. Ellis, 497 F.3d 606, 614 (6th Cir. 2007).

Here, there appears to have been some delay in verifying Stevens' identity related to confusion over whether his legal name was "John" or "Ajani." However, the testimony was that the time between when Trooper Duvall began his records check and when he asked Stevens for permission to search the car was about eleven minutes (DN 25, p. 28). Stevens has not offered any evidence or argument that the duration of the traffic stop was unreasonable under the circumstances or otherwise exceeded the mission of the stop.

3. Whether the search was consensual.

"It is well-settled that a person may waive his Fourth Amendment rights by consenting to a search. . . . Consent to a search may be in the form of words, gesture, or conduct. . . . In whatever form, consent only has effect if it is freely and voluntarily given." United States v. Carter, 378 F.3d 584, 587 (6th Cir. 2004) (internal quotations and citations omitted). "It is the Government's burden, by a preponderance of evidence, to show through 'clear and positive' testimony that valid consent was obtained." United States v. Hinojosa, 606 F.3d 875, 881 (6th Cir. 2010) (*quoting* United States v. Burns, 298 F.3d 523, 541 (6th Cir. 2002)). The determination of whether consent is freely and voluntarily given is made in light of the totality of the circumstances involved. Id. Moreover, voluntary and knowing consent does not require that the defendant be advised he is entitled to refuse consent. United States v. Bradley, 163 F. App'x. 353, 357 (6th Cir. 2005) (Unpub.) (*citing* United States v. Drayton, 536 U.S. 194, 206, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002)).

The testimony during the hearing was that Stevens gave uncoerced permission to search the car. Stevens has neither argued nor presented evidence of a lack of consent for the search.

        4.    Whether the search exceeded the scope of permission.

When "law enforcement officers rely upon consent as the basis for a warrantless search, the scope of the consent given determines the permissible scope of the search." United States v. Gant, 112 F.3d 239, 242 (6th Cir. 1997) (*citing* Florida v. Jimeno, 500 U.S. 248, 251-252, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991)). An objective reasonableness standard is used to measure the scope of the consent given. Id. Specifically, the Court must assess "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Jimeno, 500 U.S. at 251 (*citing* Illinois v. Rodriguez, 497 U.S. 177, 183-89, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990)). "The scope of a search is generally defined by its express object." Jimeno, 500 U.S. at 251 (*citing* United States v. Ross, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982)).

The testimony presented during the evidentiary hearing is that Trooper Duvall asked Stevens for consent to search the vehicle, and consent was voluntarily given. While Stevens did not specify that the consent extended to searching the trunk, he disclosed to the officer that there was open alcohol and a tool pouch in the trunk, suggesting an anticipation on his part that the trunk would be examined. When the officers began their examination of the trunk and its contents, he never expressed any withdrawal or limitation on his consent to search.

Stevens argues that the only item of potential interest which Stevens mentioned to the police was an open container of alcohol in the trunk. Stevens notes that, as an open container in the trunk was not illegal, that disclosure did not provide any reason for law enforcement interest in the trunk. Moreover, to the extent there was a reason to search for an open container, Stevens contends that it would not be expected to be hidden in a closed tool pouch. Stevens further argues that, although Trooper Duvall stated during the hearing that he was concerned that Stevens might be engaged in identity theft, given that there were no items indicating this to be the case in the

passenger compartment, a bare suspicion that "John Stevens" was not Stevens' true identity did not entitle the police to rifle through every nook and cranny in search of identity cards or papers.

Were this the standard against which the reasonableness of the search is to be measured, the undersigned would agree with Stevens. He disclosed to the investigating officers that there was an open container of alcohol in the trunk and they found it. There would be little reason to expect a second open container would be hidden in the spare tire compartment, secreted in a closed tool bag. And, if it was, it would not constitute a criminal offense. Equally far-fetched is the notion that, simply because Trooper Duvall was having trouble verifying Stevens' identity, that the tool pouch would hold some evidence of identity theft when there were no other indicia of the crime. However, probable cause is not the yardstick against which a consensual search is measured. In addition to asking Stevens if he had any kind of open alcohol in the vehicle, Trooper Duvall asked if he had anything illegal and specifically if he had any weapons. Moreover, while searching for evidence of identity theft is a stretch in this case, Trooper Duvall also stated he was looking for evidence which would serve to positively identify Stevens. A general consent to search includes consent to search any accessible container within the vehicle that might hold illegal contraband. Jimeno, 500 U.S. at 251; United States v. Lucas, 640 F.3d 168, 176 (6th Cir. 2011); see also United States v. Scott, No. 1:13-cr-17, 2013 U.S. Dist. LEXIS 112648, *14-16 (E.D. Tenn. July 9, 2013) (Where occupant of vehicle gave general consent to search vehicle and did not limit or withdraw consent, officers were entitled to open and search a duffle bag in the car.). In giving consent, the subject need not specifically know the object of the officer's investigation:

> That the defendant did not—and probably could not—know what the officer was looking for does not change our view of his consent. It is self-evident that a police officer seeking general permission to search a vehicle is looking for evidence of illegal activity. It is just as obvious that such evidence might be hidden in closed containers. If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way.

United States v. Canipe, 569 F.3d 567, 605 (6th Cir. 2009) (*quoting* United States v. Snow, 44 F.3d 133, 135 (2nd Cir. 1995)).

Here, Trooper Duvall and the other officers were looking generally for illegal contraband and specifically for weapons or material that would positively identify Stevens. These could reasonably be expected to be located in vehicle compartments, such as the spare tire compartment, and within closed containers in the vehicle. There is no proof that Stevens' consent to search was anything other than open-ended.[1] The officers were therefore entitled to look under the spare tire cover and open the tool pouch.

<u>Recommendation</u>

The undersigned **RECOMMENDS** that the Defendant's motion to suppress evidence, DN 17, be **DENIED**.

---

[1] Trooper Duvall testified that when they located the open container of alcohol in the trunk, Stevens stated "there's nothing in there but a tool pouch" (DN 25, p. 22, ln. 4-7). The undersigned does not interpret this as a limitation or withdrawal of the general consent to search, but rather an attempt to allay the officers' suspicions and discourage them from continuing the search.

## NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and Fed. R. Crim. P. 59(b)(1), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. Fed. R. Crim. P. 59(b)(2). "Failure to object in accordance with this rule waives a party's right to review." Fed. R. Crim. P. 59(b)(2).